UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

UNITED STATES OF AMERICA

v.     CASE NO. 5:08-cr-32-Oc-10GRJ

ROY B. AGELOFF

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by A. Brian Albritton, United States Attorney for the Middle District of Florida, and the defendant, ROY B. AGELOFF, and the attorney for the defendant, Daniel Brodersen, mutually agree as follows:

A. **Particularized Terms**

1. Count Pleading To

The defendant shall enter a plea of guilty to Count One of the First Superseding Indictment. Count One charges the defendant with Conspiracy to Commit Money Laundering, in violation of 18 U.S.C. § 1956(h).

2. Maximum Penalties

Count One carries a maximum sentence of ten years' imprisonment, a fine of $250,000, a term of supervised release of three years, and a special assessment of $100, said special assessment to be due on the date of sentencing. With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of

Defendant's Initials _____     1     AF Approval _____
                                     Chief Approval _____

the offenses, and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense, or to the community, as set forth below.

3. Elements of the Offense

The defendant acknowledges understanding the nature and elements of the offense with which defendant has been charged and to which defendant is pleading guilty. The elements of Count One, a violation of 18 U.S.C. § 1956(h) (conspiracy) are:

First: Two or more persons agreed to commit a criminal offense, as charged in the First Superseding Indictment, in this case, to launder money in violation of § 1957, and

Second: That the defendant knowingly and willfully became a member of such conspiracy.

4. No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement related to the conduct giving rise to this plea agreement.

5. Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a). The defendant understands

Defendant's Initials _RA_    2    ⅅ Chief Approval _ARC_

that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b), the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

6. <u>Low End</u>

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will to the Court that the defendant receive a sentence at the low end of the applicable guideline range, as calculated by the Court. The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

7. <u>Cooperation - Substantial Assistance to be Considered</u>

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other

Defendant's Initials _____    3    ℘ Chief Approval _____

matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require. If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) or both. If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b). In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

8. Use of Information - Section 1B1.8

Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of defendant's cooperation and pursuant to this agreement shall be used in determining the

Defendant's Initials _____   4   ᗡ Chief Approval _____

applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

9. Cooperation - Responsibilities of Parties

   a. The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime. However, the defendant understands that the government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

   b. It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

   (1) The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

   (2) The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement. With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the

Defendant's Initials _____      5      Chief Approval _____

nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by recision of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3) The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4) The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(5) The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in

Defendant's Initials _____        6        ▷ Chief Approval _____

this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

10. <u>Forfeiture of Assets</u>

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 982, whether in the possession or control of the United States or in the possession or control of the defendant or defendant's nominees. The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, and/or administrative forfeiture action. The defendant also hereby agrees that the forfeiture described herein is not excessive and, in any event, the defendant waives any constitutional claims that the defendant may have that the forfeiture constitutes an excessive fine. The assets the defendant is forfeiting to the United States include:

- A.  Roy Ageloff's interest in the real properties, including all improvements thereon and appurtenances, thereto located at:

    - (1) 100 N. Ocean Blvd #106, Delray Beach, Florida 33483, purchased on or about June 2, 2002,

    - (2) 110 Washington Avenue, #1605, Miami Beach, Florida 33139, purchased on or about July 2004,

    - (3) North 4th Street, Lantana, Florida, purchased on or about January 4, 2005, and

    - (4) 1406 N. Federal Highway, Boynton Beach, Florida, purchased on or about June 5, 2005.

- B.  The following jewelry (seized from safety deposit box #96, in the name of Harris and Lenore Ageloff, located at AmTrust Bank, Delray Beach, Florida, on February 14, 2008):

Defendant's Initials _RA_          7          Chief Approval _PRG_

    (1)    One Longines Gold Watch,

    (2)    One Croton Gold Watch,

    (3)    One Movado Watch,

    (4)    One Rolex Watch,

    (5)    One Piaget Watch,

    (6)    One Breguet Mariner Watch, and

    (7)    One Hubolod MDM Watch.

C.    The assets of the following trusts:

    (1)    The Roy B. Ageloff Irrevocable Trust, including:

        (a)    any and all funds seized from the NewAlliance Bank Money Market Account Number 7000 86 8434, in the name of The Roy B Ageloff Irrevocable Trust;

        (b)    any and all funds seized from the NewAlliance Bank Certificate of Deposit Customer Number 2030381 28, Account Number 00001, in the name of The Roy B Ageloff Irrevocable Trust; and

        (c)    any and all funds seized from the Regent Bank Certificate of Deposit Account Number 0203038128, in the name of The Roy B Ageloff Irrevocable Trust.

    (2)    The Roy B. Ageloff Revocable Trust, and

    (3)    The Roy B. Ageloff Educational Trust, including:

        (a)    Judgment for $1,622.821.40 in <u>David Schottenfeld, as Trustee of the Ageloff Education Irrevocable Trust, v. David Glasser</u>, No. 05-61655-CIV-Moreno, (S.D. Fla. 2006) converted to No. 2:07-cv-00878-AHS-AJW (E.D.CA. 2007) for enforcement.

D.    Proceeds seized from the following financial account:

    (1)    AmTrust Checking Account Number 740156005, in the name of Harris J. Ageloff or Lenore Ageloff.

Defendant's Initials _____    8    Chief Approval _____

E. The following loan amounts owed to Roy Ageloff, which were originally funded with proceeds from Roy Ageloff's securities fraud schemes described herein:

(1) $160,000 loan from Roy Ageloff to Michael Ageloff on or about August 11, 2002,

(2) $300K loan from Roy Ageloff to Michael Ageloff on or about September 29, 2003,

(3) $200,000 loan from Roy Ageloff to Michael Ageloff on or about September 22, 2003, and

(4) $36,000 loaned to Kellie McDaniel by Michael Ageloff.

F. The following investments, which were funded with proceeds from Roy Ageloff's securities fraud schemes described herein:

(1) $1.86 million of the $2.6 invested with Irwin and Doug Peters in September 1998, and

(2) $500,000 invested in Shorewalker Place LLC by LLC Brandon Development in June 2002.

Section 982(a)(1), authorizes the criminal forfeiture of any property, real or personal, involved in violations of 18 U.S.C. § 1956(h), or any property traceable to such property. The defendant admits that the financial transactions which funded the purchase of the above-identified real properties, jewelry, loans and investments were made in violation of 18 U.S.C. § 1956(h). As such, the defendant admits those assets are subject to forfeiture pursuant to 18 U.S.C. § 982(a)(1).

The defendant further admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to the provisions of Rule 32.2(b)(1), the United States and the defendant request that at the time of accepting this plea

Defendant's Initials _MA_    9    Chief Approval _____

agreement, the Court make a determination that the government has established the requisite nexus between the property subject to forfeiture and the offense to which defendant is pleading guilty and enter a preliminary order of forfeiture. Pursuant to Rule 32.2(b)(3), the defendant agrees that the preliminary order of forfeiture shall be final as to the defendant at the time it is entered, notwithstanding the requirement that it be made a part of the sentence and be included in the judgment.

The defendant agrees to forfeit all interests in the properties described above and to take whatever steps are necessary to pass clear title to the United States. These steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Defendant further agrees to take all steps necessary to locate property and to pass title to the United States before the defendant's sentencing. To that end, defendant agrees to fully assist the government in the recovery and return to the United States of any assets, or portions thereof, as described above wherever located. The defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control and those which are held or controlled by a nominee. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States.

The defendant agrees that the United States is not limited to forfeiture of the property described above. If the United States determines that property of the defendant identified for forfeiture cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond

Defendant's Initials _____     10     ⱴ Chief Approval _____

the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty; then the United States shall, at its option, be entitled to forfeiture of any other property (substitute assets) of the defendant up to the value of any property described above. This Court shall retain jurisdiction to settle any disputes arising from application of this clause. The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon the defendant in addition to forfeiture.

### B.  Standard Terms and Conditions

#### 1.  Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offense, pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1) (limited to offenses committed on or after April 24, 1996); and the Court may order the defendant to make restitution to any victim of the offense, pursuant to 18 U.S.C. § 3663 (limited to offenses committed on or after November 1, 1987) or § 3579, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. On each count to which a plea of guilty is entered, the Court shall impose a special assessment, to be payable to the Clerk's Office, United States District Court, and

Defendant's Initials _RA_     11     D Chief Approval _[signature]_

due on the date of sentencing. The defendant understands that this agreement imposes no limitation as to fine.

2. <u>Supervised Release</u>

The defendant understands that the offense to which the defendant is pleading provides for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3. <u>Sentencing Information</u>

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit, upon execution of this plea agreement, an affidavit reflecting the defendant's financial condition. The defendant further agrees, and by the execution of this plea agreement, authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office or any victim named in an order of restitution, or any other source, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information

Defendant's Initials _____   12   Chief Approval _____

concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court.

4.  Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

5.  Defendant's Waiver of Right to Appeal and
    Right to Collaterally Challenge the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence or to challenge it collaterally on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to

Defendant's Initials _RA_         13         ▷ Chief Approval _____

the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by Title 18, United States Code, Section 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by Title 18, United States Code, Section 3742(a).

6. <u>Middle District of Florida Agreement</u>

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

7. <u>Filing of Agreement</u>

This agreement shall be presented to the Court, in open court or <u>in camera</u>, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

8. <u>Voluntariness</u>

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The

Defendant's Initials _RA_         14         D Chief Approval _____

defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

9. <u>Factual Basis</u>

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth below are

Defendant's Initials _RA_         15         Chief Approval _BRG_

true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt:

## FACTS

From 1991 to 1998, ROY B. AGELOFF was involved in a stock or securities manipulation scheme whereby he swindled thousands of investors out of millions of dollars. He used the profits from his criminal activities to purchase luxury automobiles, homes, and jewelry, including a number of expensive watches (listed in paragraph 10, Forfeiture of Assets). ~~ROY B. AGELOFF took extensive measures to hide his wealth and did not file federal income tax returns from 1994 to the present year.~~

On August 17, 2000, ROY B. AGELOFF pled guilty to Count One of a thirty-four count superseding indictment filed in the United States District Court for the Eastern District of New York. Count One charged ROY B. AGELOFF with being a member of a criminal organization engaged in a pattern of racketeering activities in violation of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. §§1962(c) and 1963. Within Count One, ROY B. AGELOFF pled guilty to four separate racketeering acts involving fraud upon members of the investing public in connection with purchases and sales of securities by using instruments of communication in interstate commerce and the mails. On August 15, 2001, ROY B. AGELOFF was sentenced to 96 months' imprisonment and three years' supervised release. ROY B. AGELOFF was also ordered to pay his victims, which numbered in the thousands, $80 million in restitution. The restitution portion of ROY B. AGELOFF's sentence was partially vacated so that the district court could determine the exact number of victims and their actual losses. ROY

Defendant's Initials _____    16    Chief Approval _____

B. AGELOFF's re-sentencing is still pending before the United States District Court for the Eastern District of New York.

After ROY B. AGELOFF came under investigation for securities fraud in the late 1990's, he conspired with Michael S. Ageloff and others to launder his criminal profits. ROY B. AGELOFF used Michael S. Ageloff and others to conceal, manage, invest, transfer and distribute the illegal profits. Between 1997 and 1998, ROY B. AGELOFF invested approximately $3.5 million of illegal profits in various movie productions (hereinafter "movie money"). On or about August 11, 2002, Michael S. Ageloff received $160,000 in movie money from an unindicted co-conspirator. Michael S. Ageloff and others received $500,000 in partial payment from the sale of a movie production company named "Cutting Edge Entertainment" in 2003. This money was distributed to Michael S. Ageloff in the form of two checks, one for $300,000 and the other for $200,000.

In late 1998, ROY B. AGELOFF directed Michael S. Ageloff to deliver $2.26 million in United States currency to co-conspirators at a Carlstadt, New Jersey warehouse ("the New Jersey money"). This money was profits that ROY B. AGELOFF had accumulated through securities fraud activities. In exchange for the $2.26 million, the co-conspirators agreed to make monthly interest payments, usually in the form of cash, to Michael S. Ageloff and others. The interest payments were to benefit ROY B. AGELOFF's family and his girlfriend and enabled them to drive luxury cars, attend private schools, take vacations, and pay their rents and mortgages. These cash payments were made to Michael S. Ageloff and others from 1998 through 2007 and at times were in excess of $10,000. The first payment was made on or about December 15, 1998.

Defendant's Initials __RA__    17    ⱴ Chief Approval __RG__

Michael Ageloff and Presidential Way LLC used $400,000 of the New Jersey money as partial payment for the purchase of real property located at North 4th Street, Lantana, Florida, on January 4, 2005. Other co-conspirators used $1,000,000 of the New Jersey money to purchase real property located at 1406 Federal Highway, Boynton Beach, Florida, on June 5, 2005.

In addition to the movie and New Jersey money, Michael Ageloff used other profits from ROY B. AGELOFF's securities fraud scheme to make real estate investments. Michael Ageloff purchased the real property located at 100 North Ocean Blvd, #106, Delray Beach, Florida, in June 2002, and the real property at 1110 Washington Avenue, #1605, Miami Beach, Florida, in July 2004, with proceeds of the scheme. In June 2002, Michael Ageloff also invested $500,000 of criminal profits with Jacqueline Dawes in a development called "Shorewalker Properties." Michael Ageloff also loaned $36,000 in criminal profits to a woman named Kellie McDaniel.

A few days before sentencing on August 15, 2001, ROY B. AGELOFF established three trusts to insulate criminal profits from the United States and creditors, the Roy B. Ageloff Irrevocable Trust, the Ageloff Education Irrevocable Trust, and the Roy B. Ageloff Revocable Trust Agreement. While ROY B. AGELOFF's attorney mentioned the existence of the trusts at his sentencing in the Eastern District of New York, very few details regarding their source of funding, assets, restrictions, beneficiaries or locations was provided to the judge. One asset of the Roy B. Ageloff Irrevocable Trust was a home located in the New York Hamptons, located at 19 Lacebark Lane, East Quogue, New York. This residence was purchased for $435,000 on September 13, 1994, with criminal profits and titled in ROY B. AGELOFF's name and transferred to the

Defendant's Initials __RA__         18         Chief Approval __RG__

Roy B. Ageloff Irrevocable Trust in October 2001. In January 2007, the home was sold for $880,901.00 and the money was deposited in the Roy B. Ageloff Irrevocable Trust. A current asset of the Roy B. Ageloff Irrevocable Education Trust is a judgment for $1,622,821.40 against David C. Glasser. See <u>David Schottenfeld, as Trustee of the Ageloff Education Irrevocable Trust, v. David Glasser</u>, No. 05-61655-CIV-Moreno, (S.D. Fla. 2006) converted to No. 2:07-cv-00878-AHS-AJW (E.D.CA. 2007) for enforcement. This judgment stems from ROY B. AGELOFF's ownership in the movie production company "Cutting Edge Entertainment" which became eventually became "Splendid Films."

From November 20, 2001 to October 23, 2003, ROY B. AGELOFF was confined at the Federal Correctional Complex (FCC) at Coleman, which is located in Sumter County, Florida. During that time, ROY B. AGELOFF gave Michael S. Ageloff and others instructions regarding the management, transfer, concealment, and investment of the profits he obtained through securities fraud. ROY B. AGELOFF met with Michael S. Ageloff, spoke to him on telephones, and corresponded with him via mail to communicate about the conspiracy while he was confined at the FCC.

10. <u>Entire Agreement</u>

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

Defendant's Initials _____     19     ) Chief Approval _____

11. <u>Certification</u>

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this __17__ day of __DECEMBER__, 2008.

_____
Roy B. Ageloff
Defendant

A. BRIAN ALBRITTON
United States Attorney

_____
Daniel W. Eckhart
Assistant United States Attorney

_____
Daniel Brodersen
Attorney for Defendant

_____
Roger B. Handberg
Assistant United States Attorney
Chief, Orlando Division

Defendant's Initials ____   20   ) Chief Approval ____