UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

UNITED STATES OF AMERICA,

v.                                                            Case No.: 5:08-cr-00032-WTH-GRJ

ROY B. AGELOFF,

    Defendant.
_____/

**AMENDED SENTENCING MEMORANDUM**
**(AMENDED TO CORRECT ERRONEUS GUIDELINE CALCULATION)**

Defendant, ROY B. AGELOFF, by and through his undersigned attorney, hereby files this Amended Sentencing Memorandum in anticipation of the July 22, 2009 sentencing hearing in the above-styled action and states as follows:

**A.   INTRODUCTION**

1. The Defendant is presently incarcerated at the Orange County Correctional Facility awaiting sentencing by this Court based on his plea of guilty to 18 U.S.C. § 1956(h), conspiracy to commit money laundering in violation of 18 U.S.C. § 1957. ROY AGELOFF has been in the continuous custody of the United States Bureau of Prisons since August 15, 2001 serving a ninety-six (96) month federal sentence he received in the United States District Court, Eastern District of New York based on his guilty plea to offenses that occurred from 1991-1998. As part of his plea agreement with the U.S. Attorney in Brooklyn, the Government promised not to prosecute the Defendant for any other federal criminal offenses, including money laundering, that had occurred prior to the entry of his guilty plea. Nevertheless, much of the conduct that the Defendant was charged with in the instant action occurred prior to his guilty plea in the

Brooklyn matter and, thus, ostensibly could not have been charged by the U.S. Attorney for the Eastern District of New York. The Defendant was also previously convicted of escape based on his guilty plea to briefly absconding from a minimum security federal facility in Miami, Florida in 2005 and was sentenced to one (1) year and one (1) day to run consecutively to the New York sentence. The Defendant's presumptive release date is August 3, 2009.

     2.    Although the Court has the benefit of the Presentence Report prepared by Senior United States Probation Officer Richard M. Svendsen and the Second Revised Addendum thereto that addresses the Defendant's unresolved objections to certain factual matters and the recommended advisory sentencing guideline calculations contained therein, the Defendant respectfully requests that the Court give due consideration to the matters set forth below in fashioning an appropriate sentence for the Defendant for the acts he plead guilty to in this district. By raising these issues, the Defendant in no way intends to excuse or in any way attempt to escape from responsibility for the criminal misconduct to which he plead guilty in this district.

     3.    On May 21, 2009, this Court imposed a forty-eight (48) month sentence on the Defendant's brother and co-Defendant in this matter, Michael Ageloff, based on much of the same conduct for which this Defendant will be sentenced on July 22, 2009. However, as set forth below, many of Michael Ageloff's activities were undertaken without the knowledge or approval of this Defendant due to his continuous incarceration since 2001. Thus, notwithstanding the fact that Michael Ageloff apparently blames the Defendant for his own criminal wrongdoing, this Defendant takes the position that he less culpable than his brother in that he was unaware of most of the conduct in which

his brother engaged. The sentence imposed on this Defendant by the Court should reflect the varying degrees of culpability.

    4.    The facts relied on by the Government in its Plea Agreement with the Defendant and by the United States Probation Office in the PSR in large measure involved specific acts and transactions undertaken by Michael Ageloff that, although part of the conspiracy, were not reasonably foreseeable to this Defendant and were consummated without his knowledge or consent. Specifically, this Defendant had no knowledge of and did not consent to the real estate transactions set forth in paragraphs 10 and 11 of the PSR. These same facts are made part of the Defendant's Plea Agreement because the Government gave him no option but to admit to them as part of these proceedings. Nevertheless, the Government acknowledged at the hearing during which this Defendant entered his guilty plea that this Defendant saw documents evidencing many of the acts and transactions engaged in by his brother for the first time when he was provided with discovery in this action. (Doc. 108, pp. 31-32) This is not to say that this Defendant does not acknowledge that he committed the offense to which he plead guilty, to wit: conspiracy to engage in monetary transactions involving the proceeds of unlawful activity (in excess of $10,000.00) constituting a violation of 18 U.S.C. §1957 all in violation of 18 U.S.C. § 1956(h). Simply put, this Defendant admits that he violated the law. However, he takes exception to the characterization that his misconduct was more serious than that of his brother and that his responsibility for all of his brother's transgressions is warranted.

    **B.**    **UNRESOLVED OBJECTIONS TO THE PRESENTENCE REPORT**

While it is appropriate to include Michael Ageloff's conduct in the Defendant's

PSR to the extent that such conduct was reasonably foreseeable to the Defendant, there is no evidence that the Defendant "instructed" Michael Ageloff on most of the conduct that he engaged in. While the Defendant acknowledges that he provided some instructions to Michael Ageloff, any such instructions were of a very limited nature and, in most cases, were not abided by.

In paragraph 8 of the PSR, it states that between 1997 and 1998 Roy B. Ageloff invested $3.5 million dollars in illegal profits in various movie productions (the "movie money.") Initially, it must be noted that mot all of the monies that the Defendant invested constituted illegal proceeds. Furthermore, this investment and the Defendant's corresponding interest in Cutting Edge Entertainment was fully disclosed to the Court, the probation office, and the prosecution in the Eastern District of New York. This Defendant had no knowledge that his brother received $160,000.00 of this money until the indictment was returned in the instant case. The only other monies that were recouped from the "movie money," the $500,000.00 partial payment from the sale of Cutting Edge Entertainment were distributed to Michael Ageloff and expended as he deemed appropriate notwithstanding this Defendant's communications with his lawyer that these funds be held in interest bearing investments for the purpose of making restitution to the Government upon his release.

Paragraph 9 of the PSR contains information that is inaccurate and misleading. Specifically, while this Defendant requested that his brother obtain the "New Jersey money" (a portion of which constituted proceeds of his illegal conduct in the Eastern District of New York), this Defendant did not direct Michael Ageloff to deliver these monies to a warehouse in Carlstadt, New Jersey. This Defendant received the "interest" payments referred to in paragraph 9 until he was incarcerated in August, 2001.

4

Thereafter, Michael Ageloff took control of these monies, both principal and interest, and diverted a large portion of them to his own use and benefit. While this Defendant's daughters attended private schools, each did so for approximately six (6) months and then were forced to withdraw because Michael Ageloff advised that there were no additional monies. No mortgages were ever paid with these interest payments.

As set forth above, the real estate transactions referred to in paragraphs 10 and 11 of the PSR were undertaken independently by Michael Ageloff without the knowledge or consent of this Defendant

Paragraph 12 of the PSR should reflect that the three trusts established by the Defendant prior to his 2001 sentencing in the Eastern District of New York were fully disclosed to the sentencing judge as reflected by the transcript of the August 15, 2001 sentencing hearing. The Defendant's then financial condition was discussed in detail by the Defendant in his pre-sentencing financial disclosure, in the PSR prepared by the Probation Office in the Eastern District of New York, and at the sentencing hearing. In addition, the "Hamptons house" was purchased by the Defendant's parents and titled in their names. His parents' equity in this home was used as bail for his release during the period following his arrest in the Eastern District of New York with the approval of the federal court. Prior to the New York sentencing hearing, this house was transferred to a trust based on estate planning advice that the Defendant and his parents received.

Paragraph 13 of the PSR should reflect that the judgment against David C. Glasser is not an asset of this Defendant but rather is an asset of the Ageloff Education Irrevocable Trust.

Paragraph 14 of the PSR should further reflect that the Defendant was

transferred to the custody of the United States Marshal's Service in the Middle District of Florida from the Bureau of Prisons initially on March 7, 2008 on a Writ Ad Testificaum. Thereafter, the Defendant has been continuously in the Marshal's custody as a result of the indictment and warrant in the instant matter.

The Defendant objects to paragraph 19 of the PSR and contends that his Base Offense Level should be 22 based on the "loss" of more than $400,000 and less than $1,000,000. The figures set forth in paragraph 19 of the PSR do not represent the "profits" of the offense to which the Defendant plead guilty (the appropriate measure under prevailing law) and are also the result of multiple counting.

The Defendant objects to paragraph 20 of the PSR. This was clearly not a sophisticated money laundering scheme. The Defendant's sole objective was to attempt to have his brother marshal the assets that remained following his indictment, guilty plea, and sentencing in the Eastern District of New York. Thereafter, the Defendant's "instructions" to his brother focused on utilizing what assets remained following the New York prosecution to settle his outstanding restitution obligations to the Government and/or to provide basic necessities for his family while he was incarcerated. In fact, the Defendant always intended to do whatever he could to satisfy his obligations to the Government.

Furthermore, contrary to paragraph 22 of the PSR, this Defendant was not an organizer, leader, manager, or supervisor of the conduct that forms the basis for his guilty plea. In other words, there is no evidence that demonstrates that this Defendant exercised control or influence over his brother, the only other identified participant in the charged criminal activity. Rather, his brother, who was not incarcerated, controlled most

aspects of the conspiracy, along with Douglas Peters stole money from the Defendant, and undertook a myriad of acts and transactions that were unknown to this Defendant or, in several instances, were undertaken against his expressed wishes.

Finally, the Defendant objects to paragraphs 33 and 34 of the PSR as his total Criminal History Points should be 6 rather than 9 as set forth in paragraph 35 of the PSR. He objects to the 3 criminal history points added by the probation officer for committing the instant offense while imprisoned serving the New York federal sentence because this imprisonment was based on a guilty plea to an offense that was part of, related to, and/or the predicate to the instant offense. Thus, it is the Defendant's position that he falls within a Criminal History Category III.

C. **RELEVANT LEGAL STANDARDS**

1. **The Burden is On The Government to Establish the Amount of "Loss" and Any Sentencing Enhancements By a Preponderance of the Evidence.**

The government bears the burden at sentencing of proving the loss amount by a preponderance of the evidence. *United States v. Brunot*, No. 08-10451 (11th Cir. 2008); *see also United States v. Bernardine*, 73 F.3d 1078, 1080 (11th Cir. 1996). This burden must be met with reliable and specific testimony or documents. *Bernadine*, 73 F.3d at 1080. In the instant matter, although the Defendant plead guilty to conspiracy to engage in monetary transactions involving the proceeds of unlawful activity (in excess of $10,000.00) constituting a violation of 18 U.S.C. §1956(h), he did by no means admit to causing a "loss" of over $8 million dollars as indicated in the PSR.

The Defendant readily acknowledges that he took steps to protect $2.26 million dollars in funds in 1998 by "investing" these funds with his long time friend Douglas

7

Peters (and his father, Irwin Peters) and thereafter collecting "interest" payments from the Peters until 2001 when the Defendant was incarcerated following his guilty plea in Brooklyn. Upon his incarceration, his brother became the recipient of the interest payments and did with them as he chose. Michael Ageloff and Douglas Peters later took approximately $1,400,000.00 of the original "principal" and utilized these funds for their own benefit. In other words, the preponderance of the evidence indicates that Douglas Peters and the Defendant's brother utilized $1.4 million of the $2.26 million (together with much of the interest paid on this investment between 2001 and 2005) for their own benefit. The Defendant was in reality fully divested of ownership of the $2.26 million. Thus, it is this Defendant's position that the appropriate "loss" amount should be calculated based on the aggregate amount of "interest" payments that inured to his benefit and the benefit of his children and fiancée from 1998 until his indictment in the instant case. This amount falls within the $400,000.00 to $1,000,000.00 category.

The inclusion by the probation officer of the $3,500,000.00 in "movie money", the principal "investment" of $2.26 million, the $435,000.000 (earned prior to 1991) gifted by the Defendant to his parents to purchase the "Hamptons house", and of the various expenditures and real estate investments of the Defendant's brother (which were unknown to the Defendant at the time they occurred) is simply erroneous. The "movie money" was fully disclosed to the probation office, the United States Attorney, and the Court in the Eastern District of New York. There has never been any attempt on the part of the Defendant to conceal these monies, his interest in Cutting Edge Entertainment, and the fact that he was defrauded by David C. Glasser, with whom he invested those funds in 1997. In fact, the Ageloff Education Irrevocable Trust recovered a judgment

8

against Glasser. The Defendant has agreed to forfeit any individual interest he might have had in this asset to the Government in his Plea Agreement. Finally, investments which were made by the Defendant's brother on real estate and his brother's loans to others that came from the "New Jersey" money and or the "movie" money and cannot be counted twice against this Defendant.

The offense of conviction in the instant action is not the type of offense addressed in *United States v. Li*, 973 F.Supp. 567, 573-75 (E.D. Va. 1991), a case on which the Government may rely. In other words, this Defendant did not take any affirmative steps to conceal the funds "invested" or the "interest" payments made during his incarceration. Thus, the monetary transactions of which he was aware and that occurred after the New York prosecution are all that should be counted as part of the loss in this action. *See generally United States v. Martin*, 320 F.3d 1223, 1226-27 (11th Cir. 2003).

### 2. The Conspiracy That Defendant Plead Guilty To Was Not A Sophisticated Money Laundering Scheme.

Section 2S1.1(b)(3) of the advisory guidelines provides for a two-level enhancement if a money laundering offense involves "sophisticated laundering." U.S.S.G. § 2S1.1(b)(3). The guidelines commentary explains that "`sophisticated laundering' means complex or intricate offense conduct pertaining to the execution or concealment of the *18 U.S.C. § 1956* offense" and that it typically involves the use of "fictitious entities," "shell corporations," "two or more levels (i.e., layering) of transactions," or "offshore financial accounts." U.S.S.G. § 2S1.1 cmt. n.5(A).

Because the offense of conviction involves a conspiracy to commit violations of 18 U.S.C. § 1957, it is the Defendant's position that this enhancement does not apply as

9

a matter of law because it does not pertain to the execution or concealment of an 18 U.S.C. § 1956 offense. *See United States v. Galdos,* No. 07-15898 (11th Cir. 2009). Moreover, the § 1957 offenses which were the object of the conspiracy to which this Defendant plead guilty, which occurred during the Defendant's incarceration, simply did not involve the use of fictitious entities, shell corporations, layering of transactions, or offshore accounts. Therefore, the Defendant respectfully submits that the Court should determine that the sophisticated laundering enhancement is inapplicable.

### 3. The Defendant Was Not An Organizer, Leader, Manager, or Supervisor.

The advisory sentencing guidelines provide for a two-level increase in a defendant's offense level if he was "an organizer, leader, or supervisor in any criminal activity . . . ." U.S.S.G. § 3B1.1(c). "To qualify for an adjustment under this section, the Defendant must have been the organizer, leader, manager, or supervisor of one or more other participants." U.S.S.G. § 3B1.1, comment. n.2

The government bears the burden of proving a U.S.S.G. § 3B1.1(c) enhancement. *United States v. Lozano-Hernandez*, 89 F.3d 785, 791 (11th Cir. 1996) Factors to consider in determining whether the defendant qualifies for the § 3B1.1(c) role enhancement include: (1) the exercise of decision making authority; (2) the nature of participation in the commission of the offense; (3) the recruitment of accomplices; (4) the claimed right to a larger share of the fruits of the crime; (5) the degree of participation in planning or organizing the offense; (6) the nature and scope of the illegal activity; and (7) the degree of control and authority exercised of others. U.S.S.G. § 3B1.1, comment. n.4. An analysis of these factors, to the extent they can be applied to

the instant case, militates against a finding that this Defendant occupied a leadership role vis-à-vis his brother.

It is somewhat axiomatic that this Defendant has lacked the ability to exercise any control or influence over any person while he has been in the custody of the Bureau of Prisons and/or the United States Marshal's Service since August 15, 2001. Accordingly, it is clear that it would only be appropriate for this Court to enhance the Defendant's advisory guideline sentence under U.S.S.G. § 3B1.1(c) if the Government establishes by a preponderance of evidence that he did in fact exercise any control or influence over his brother with regard to the acts and transaction that were part of the conspiracy to which he plead guilty. Absent competent evidence in this regard, the Court should decline to apply a leadership enhancement.

It is the Defendant's position, as set forth above, that his "instructions" to his brother were limited and specifically tailored attempt to insure that his brother utilized the "interest" payments from the "New Jersey money" and the limited return of some of the "movie money" to satisfy the Defendant's outstanding $500,000.00 restitution obligation and/or to provide basic support to his children. It is beyond comprehension how the Defendant could be deemed a leader, organizer, or manager in the conspiracy he plead guilty to where he did not know of a his brother's decisions to divest him of $1.4 million dollars, to utilize $400,000.00 to purchase the real property located at N. 4th Street in Lantana, Florida, to utilize $1 million to purchase real property located at 1406 Federal Highway in Boynton Beach, Florida, to invest $500,000.00 in the "Shorewalker Properties," or to loan Kellie McDaniel the sum of $36,000.00.

Thus, while this Defendant concedes that the aforementioned acts and transactions were part of the charged conspiracy, he remains steadfast in his

position that they were not foreseeable to him and that he could not have taken a leadership role with regard to them.

### D. THIS COURT'S DISCRETION UNDER 18 U.S.C. § 3584 AND U.S.S.G. § 5G1.3

18 U.S.C. § 3584 provides in pertinent part that:

**(a) Imposition of Concurrent or Consecutive Terms—** If multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively, except that the terms may not run consecutively for an attempt and for another offense that was the sole objective of the attempt. Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively. Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently.
**(b) Factors To Be Considered in Imposing Concurrent or Consecutive Terms—** The court, in determining whether the terms imposed are to be ordered to run concurrently or consecutively, shall consider, as to each offense for which a term of imprisonment is being imposed, the factors set forth in section 3553(a)

"The intended purpose of [18 U.S.C. §3584 and] U.S.S.G. § 5G1.3(b) is to effectively credit for guidelines purposes defendants who have already served time — generally in another jurisdiction — for the same conduct or course of conduct." *United States v. Flowers,* 13 F.3d 395, 397 (11th Cir. 1994). Thus, the sentencing guidelines provide a mechanism for a second sentencing court "to mitigate the possibility that the fortuity of two separate prosecutions will grossly increase a defendant's sentence." *Witte v. United States* 515 U.S. 389, 405 (1995) The guidelines envision a defendant prosecuted in "two . . . federal jurisdictions for the same criminal conduct or for different criminal transactions that were part of the same course of conduct." U.S.S.G. § 5G1.3 cmt. n.2. Accordingly, [i]f . . . the undischarged term of imprisonment resulted from

offense(s) that have been fully taken into account in the determination of the offense level for the instant offense, the sentence for the instant offense shall be imposed to run concurrently to the undischarged term of imprisonment. *Id.* § 5G1.3(b).

In the instant action, the Defendant pleaded guilty to an offense that involves a great deal of conduct that was known to the authorities in the Eastern District of New York prior to his plea and sentencing on August 15, 2001. Moreover, his New York plea agreement contemplated the dismissal of any money laundering offenses in which the Defendant engaged and contained assurances that he would not be further prosecuted by the United States Attorney for the Eastern District of New York for any such offenses. The Defendant's undischarged term of imprisonment resulted, in part, from offense(s) that have been fully taken into account in the determination of the offense level for the instant offense. Accordingly, the sentence for the instant offense should be imposed to run concurrently to the undischarged term of imprisonment. *See generally Coloma v. Holder,* 445 F.3d 1282 (11th Cir. 2006).

Accordingly, the Defendant respectfully submits that any sentence imposed by this Court should be concurrent to the August 15, 2001 sentence he is currently serving (as well as the consecutive sentence for escape that he received in 2005) *and* that the Defendant should also receive credit for the time he has been in custody as a result of the instant offense. In other words, since the Defendant has been in the custody of the United States Marshal's Service since March 7, 2008, the Judgment entered by this Court on or shortly after July 22, 2009 should specifically order that the Defendant receive between 16 and 17 months credit for this time period in the event that the Court declines to make the Defendant's sentence in this matter fully concurrent to the

undischarged sentence that was imposed in 2001.

### E. DEFENDANT'S SUBSTANTIAL ASSISTANCE UNDER U.S.S.G. § 5K1.1 AND ADDITIONAL ASSISTANCE TO THE AUTHORITIES

Since the undersigned attorney was appointed by the Court to represent the Defendant, the Defendant has cooperated fully with the Government with regard to his participation in the offense of conviction and several other matters being investigated by the Government. He has participated in many days of proffers with officials from both the Department of Justice and a local organized crime task force. He has provided voluminous information and documentation that has resulted in ongoing investigations of several individuals. The Defendant's cooperation has involved a wide variety of matters and he has provided the Government with information and evidence will allow for the investigation and prosecution of many other individuals and entities should the Government be so inclined.

In addition, the Defendant seeks the benefit of substantial cooperation of a third party (a close friend of the Defendant) with the authorities in the State of New Jersey in two separate cases which resulted in the seizure of approximately eight (8) kilograms of heroin and $88,000.00 The undersigned attorney for the Defendant has spoken with New Jersey Assistant Attorney General Phillip Mogavero and been advised that individuals have been arrested and are scheduled to enter guilty pleas in New Jersey in August of this year due primarily to the substantial assistance provided to New Jersey law enforcement by this Defendant's friend who has insisted that this Defendant receive the full benefit of his cooperation. The Government has indicated to this Defendant that it does not object to this Court's consideration of this "third party" cooperation as part of

this Defendant's sentencing.

The United States has filed a Motion For Downward Departure of the Defendant's Sentence Based Upon Substantial Assistance. In its Motion, the United States recommends that the Defendant should receive a four (4) level reduction because of his assistance. With all due respect to the United States Attorney's Office, the Defendant believes that this recommendation on the part of the Government is insufficient. In fact, while perhaps not dispositive, discussion was held on the record during the plea colloquy in this matter along the lines that the Defendant would receive a recommendation for an eight (8) level departure based on the assistance he had provided and was continuing to provide. Thus, the Defendant was somewhat surprised when he learned that the United States was recommending that the Court depart downward by only four (4) levels.

In any event, after the Government has made a motion for downward departure pursuant to U.S.S.G. § 5K1.1, it has no control over whether and to what extent the Court will depart from the advisory guidelines. *United States v. Livesay,* 525 F.3d 1084, 1091 (11th Cir. 2008). The Defendant urges this Court to consider granting a downward departure of greater than four (4) levels based on the substantial assistance both he and his close friend in New Jersey have provided to the authorities. If necessary, the Court could conduct a brief *in camera* proceeding to determine from the Assistant United States Attorney, the case agent, and the Defendant the nature and extent of the Defendant's cooperation and assistance in matters that remain under investigation and in matters that the Government has not yet begun to investigate.

F.   **CONCLUSION**

This Court will sentence ROY B. Ageloff on July 22, 2009 based upon his guilty plea to 18 U.S.C. § 1956(h), conspiracy to commit money laundering in violation of 18 U.S.C. § 1957. The United States Probation Office has prepared a PSR wherein it indicates that the advisory guideline sentence is 120 months and that the sentence for the instant offense "may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense."

The Defendant has objected the certain portions of the PSR, including the "loss" calculation, the characterization of the offense of conviction as a "sophisticated money laundering scheme," and the enhancement for the Defendant's purported leadership role. These objections have been noted in the Second Amended Addendum to the PSR and are discussed in this Memorandum. The Defendant desires to emphasize again to the Court that he takes full responsibility for his participation in the conspiracy that he plead guilty to. However, the Defendant wholeheartedly believes that the imposition of a additional sentence upon him consecutive to that which he currently serving would not be fair or appropriate given the nature, scope, and extent of his conduct in this matter.

Thus, with all due respect to the United States Probation Office and the United States Attorney's Office, the Defendant believes that his sentence should be calculated as follows:

Base  and Adjusted Offense Level – **22** - 8 plus 14 for a loss amount between $400,000 and $1 million;

Total Offense Level – **19**- 20 offset by 3 levels for timely acceptance of responsibility;

Downward Departure for Substantial Assistance under § 5K1.1 – **8 levels**

**Total Offense Level (with Downward Departure) - 11**

Criminal History Points and Category – **6 points** and therefore **Category III**

**Advisory Guideline Sentencing Range – 12-18 months**

If the Court overrules any of the Defendant's objections and/or declines to impose the downward departure that he believes that he is entitled to, the Defendant respectfully urges the Court to temper such a sentence by utilizing the discretion afforded to it in accordance with the dictates of 18 U.S.C. §§ 3553 and 3584 and U.S.S.G. § 5G1.3.

DATED this 20th day of July, 2009.

        Respectfully Submitted,

        LAW OFFICE OF
        DANIEL N. BRODERSEN, P.A.
        13350 West Colonial Dr., Suite 320
        Winter Garden, Florida 34787
        Telephone:  (407) 347-7975
        Facsimile:   (407) 347-7976
        Email:       brodersend@gmail.com
        Attorney for Defendant

By:   /s/ Daniel N. Brodersen
       DANIEL N. BRODERSEN
       Florida Bar No. 0664197

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF System this 20th day of July, 2009 and a copy of this has been electronically furnished to: Dan Eckhart, Assistant United States Attorney, Office of the United States Attorney, 501 West Church Street, Suite 300, Orlando, Florida 32805.

                                                /s/ Daniel N. Brodersen
                                                Attorney